7 W  183|
34 SC  145|

|Beale *against* The Commonwealth.

A payment to a sheriff after the return of a *fieri facias* levied upon personal property, is good to charge his sureties, and to discharge the debtor.

A valid return to an execution can only be made by the sheriff himself, but if made by a deputy, and suffered to remain without an application to set it aside, it is a ratification of it by the sheriff, and is admissible in evidence in an action against his sureties to charge them.

Although a plaintiff is liable to the officers for the fees which accrue in his suit, yet upon a judgment obtained and execution issued and the debt and costs made by the sheriff, that liability ceases, and the officers can look only to the sheriff for their fees. Hence, in an action by the plaintiff in that judgment against the sureties of the sheriff, to recover from them the money thus collected by the sheriff, the fees of the officers are not recoverable.

A return by a sheriff "served and delivered to court," upon a *capias ad satisfaciendum*, is sufficient, without other evidence, in an action against the sheriff's sureties, to charge them with the debt; and in order to discharge themselves, they must show that the prisoner was liberated by competent authority, or turned over to the sheriff's successor.

A return by a sheriff, that he had levied on the defendant's goods, without any specification, is *prima facie* evidence that they were of value sufficient to pay the plaintiff's debt.

An entry made by the prothonotary on the docket, that the defendant had produced the sheriff's receipt for the debt, interest and costs, is no evidence of the fact, so as to charge the sheriff's sureties in an action against them.

A plaintiff, by directing an execution to the sheriff against one of the sureties in his official bond, does not thereby give the co-surety an equity to be discharged from responsibility in that particular case.

That an action against a sheriff's sureties be not instituted after five years is the only limitation prescribed; no statute requires a diligent prosecution of the action when brought.

If a suit be brought in the name of the commonwealth upon the official recognizance of the sheriff, without setting out the name of the person for whose use it is brought, it is not error.

ERROR to the common pleas of *Mifflin* county.

The Commonwealth of Pennsylvania for the use of the Juniata Bank of Pennsylvania against John Beale administrator of William Beale deceased.

This was an action of debt upon the official recognizance of Thomas Beale sheriff of Mifflin county, in which the defendant's intestate was a surety. The defendant pleaded payment with leave, &c.; and also specially, "that William Beale, Esq., defendant's testator, died on the 28th day of October in the year 1820; and that this suit was commenced in this court on the 20th day of December in the year 1821.

"And further avers that this action has not been duly prosecuted

[Beale v. The Commonwealth.]

against the heirs, executors or administrators of the said William Beale, Esq. within the period of seven years from and after the death of the said William, as appears by the record in this cause. Wherefore he avers that the said plaintiff ought not to have and recover judgment against the defendant.

"And further avers that the plaintiff in this cause ought not to have and recover judgment against the lands, tenements and hereditaments which were of the said William Beale at the time of his death.

" And the said defendant further pleads that he has fully administered the goods and chattels, rights and credits of the said William Beale deceased, which have or might have come to the hands and possession of the said defendant, and has paid the same away to prior creditors, and has nothing left in his hands as administrator of the said William Beale to pay and satisfy the demand of the plaintiff in this suit or any part thereof."

Replication. That the within mentioned action has been duly prosecuted against the executors and administrators of the said William Beale deceased, and that the plaintiff ought to recover judgment against the defendant, and against the lands, tenements and hereditaments which were of the said William Beale at the time of his death, and that the executors and administrators of said deceased have not fully administered the estate which was of the said William Beale at the time of his death, and that the defendant has sufficient in his possession and power to pay the demand of the plaintiff in this suit, issue, &c.

Upon the trial of the cause, the plaintiff gave in evidence an execution issued upon a judgment of the Bank against Thomas Robinson to November term 1818, with a return upon it levied upon certain personal property ; and then offered in evidence a receipt of sheriff given to the defendant for 102 dollars, on account of that execution, dated the 19th December 1818. This evidence was objected to on the ground that the receipt was after the return day of the writ, and therefore given without authority ; but the court overruled the objection, and sealed a bill of exceptions.

The plaintiff offered in evidence another execution of the Bank against James M'Bride with the return upon it by Levi Reynolds deputy sheriff "levied on personal property." This was objected to on the ground that the deputy of a sheriff has no legal power to make a return to an execution. The objection was overruled, and exception was taken by defendant.

Upon several judgments of the bank, executions issued to the sheriff for the fees which had accrued to the different officers; and upon the trial of the cause, the plaintiff claimed to recover those which had been collected by the sheriff, and were not paid over. The court below was of opinion that the costs which accrue in the prosecution of a suit are the plaintiff's costs, and upon the collection of them, the sheriff is bound to pay them to him ; and instructed the

[Beale v. The Commonwealth.]

jury that the plaintiff was entitled to recover them in this suit : to this opinion the defendant excepted.

A *capias ad satisfaciendum* was issued at the suit of the Bank against Alexander Sanderson : to which the sheriff made this return, "served and delivered to court." There was no other evidence upon the subject. The court was of opinion that the return was insufficient and unless the bank interfered with the execution of the writ, the sheriff's sureties would be charged with the amount of the judgment.

Upon a judgment of the Bank against Reynolds, a *fieri facias* was issued, which the sheriff returned levied upon a carriage, harness, gig, store goods, and household and kitchen furniture, whereupon a *venditioni exponas* issued, and then a rule was obtained to show cause why the same should not be set aside : this rule remained undetermined for five years, when it appeared this entry was made upon the docket, "defendant appeared in court and produced sheriff Beale's receipt for debt, interest and costs, and it appearing to the court that the plaintiff had instituted a suit against the bail of the sheriff, the proceedings in this case stayed until the termination of this suit." It appeared that the personal property of David Reynolds was sold after the levy of the same on the execution of the bank, upon an execution of another person. Upon these facts the court below instructed the jury, that a return of "levied upon personal property" was *prima facie* evidence that the levy was sufficient to pay the debt, but that was subject to be rebutted, by proof that it was not sufficient, or that there were prior levies or incumbrances upon it.

David Reynolds was one of the sureties of the sheriff with the defendant's intestate, and it was contended by the defendant that the direction of the execution of the bank to the sheriff against one of his sureties was an equitable release of the other sureties from liability for the consequences. But the court was of a different opinion and so instructed the jury.

The defendant also insisted upon the facts contained in his first special plea as a defence. But the court below was of opinion that they did not in law constitute any defence.

The writ of the plaintiff did not set out the name of any one for whose use the suit was brought, and upon this ground also the defendant contended that the plaintiff could not recover. But the court was of a different opinion.

All these exceptions were assigned for error.

*Fisher*, for plaintiff in error.
*Parker* and *Benedict*, for defendant in error.

The opinion of the Court was delivered by

Gibson, C. J.—Some of the exceptions to evidence stand on principles which come up again on exceptions to the charge ; but as it is equally convenient to dispose of them here, I begin with them.

[Beale v. The Commonwealth.]

Of this number is the exception to proof of payments to the sheriff after return of *fieri facias,* which, it is said, terminates his authority for the time; and that, in this case, his receipt of the debt was an unofficial act. The goods, however, remain in his custody and power to sell them, notwithstanding; and it is necessary that the debtor be at liberty to redeem them without waiting for a *vendilioni exponas,* which gives the officer no new authority, but compels him to use, at all events, that which he already has. It is text law, that a sheriff may sell on a *fieri facias,* after the return of his writ; and it is an inevitable consequence that payment to him is good to charge his sureties and to discharge the debtor. The second exception depends on the same principle.

As to the third, it is certain that a valid return can be made only by the sheriff himself. By the statute 12 *Ed.* 2, *c.* 25, which is in force here, he is commanded to put his name to it, that the court may know whose it is; and therefore a return by the under sheriff is erroneous, though purporting to be in his name. It was at one time doubted whether the statute invalidates the act, the object being supposed no more than the amercement of the officer; and there certainly have been decisions each way; but the weight of the authorities collected in *Dalt.* 536 is, that the return is vicious. These, however, seem to have respect to mesne process. The application of the rule to final process, which is not returnable or necessarily the foundation of further judicial action, is not so apparent. Though the return were originally unauthorised, the suffering of it to stand, as in this case, without an application to set it aside, is a ratification of it, according to Andrews *v.* Linton, 1 *Salk.* 265, which binds at least the sheriff. Even without this, the declarations of the under sheriff, in the course of the business, would charge his principal; and what else is this invalid return? For the same reason, his indorsements of payments on certain executions were properly received.

The fifth bill is abandoned; and the sixth is not sustained, the evidence being clearly irrelevant.

Some of the exceptions to the charge are better founded. Under the denomination of costs, the plaintiff was allowed to recover fees not advanced by him. The difference between these was stated in Musser *v.* Good, which goes nearly the length of the present point. Fees paid at the time of the services are necessarily taxed to the party as costs; but when not advanced—and they are never then included in his bill—they are indorsed on the execution as the property of the respective officers, and received by the sheriff to their use. But it has been ruled that he who ordered the services is also liable for them on an implied contract. Down to the receipt of them by the sheriff he certainly is; but it cannot be doubted that payment to the agent of the creditor by the debtor ultimately liable, discharges the collateral liability of the intermediate one. If the money be lost in the sheriff's hands, it is lost to him whose property it was at the time; for a loss which could not have happened without some degree

of negligence must be borne by him whose inattention occasioned it, and it is the business of the officer to see that the sheriff pay over his fees.

The exception to want of direction as to the order to stay proceedings on the executions in Yoder's and Keever's cases is also well founded. It was *prima facie* a suspension of the responsibility incurred by the levy, and it might have even discharged it by giving subsequent executions priority, as was held in Eberle *v.* Mayer, 1 *Rawle* 366, or by causing the goods to perish in the sheriff's hands. All this might be rebutted by evidence proper for further direction ; but the defendant had prayed to have the benefit of the principle in the first instance, and he was entitled to it.

On the other hand, by the return of the *capias ad satisfaciendum* in Sanderson's case, the sheriff became chargeable with the body. The informal return "served and delivered to court" is in substance the formal return invariably made, according to the English practice, on final process where the prisoner is not too sick to be removed, to wit: "I have taken the body of the within named A B, whose said body I have ready *at the day and place* within named." This seems to be the universal form, for no other is found in *Watson's Sheriff* 375 ; 7 *L.L.* 271; or in *Bingh. on Ex.* 447 ; 13 *L.L.* 221; and indeed none other would fulfil the command of the writ. I suspect that, except to a *capias ad satisfaciendum* on a statute or recognizance in which the mandate is to take and commit in the first instance, or by our practice, evidently borrowed from arrests on mesne process, the return of *in custodia* or *committitur* would not be allowed. The English forms afford no precedent of it, the mandate of the *capias ad satisfaciendum* on a judgment being invariably, as with us, to have the body before the court at the return of the writ. The return before us, therefore, is in substance a better one than the return established by our practice. It is, doubtless, loosely worded ; but the writ could be served only by arresting the debtor ; and the delivery of him to court could be nothing else than the production of his body there to answer its exigence. The sheriff may doubtless have had his purposes to serve by the use of language so ambiguous ; but if a man will undertake an office for which he is disqualified by want of capacity or proper dispositions, he has no room to complain that his obscurities and informalities are interpreted to his disadvantage. The return here was sufficient to charge him with the prisoner in the first instance ; and being bound, from a reasonable time after the arrest, to keep him in jail, he can discharge himself only by showing that the prisoner was liberated by competent authority, or turned over to his successor ; without which his appearance at large—and there was no justification of it here—is an escape which fixes the sheriff with the debt.

To the execution in Reynolds's case the sheriff returned that he had levied the debtor's goods, but without specifying the value ; and the presumption being that it was equal to the amount of the debt,

it lay on the defendant to show the true value, prior liens, or subsequent matter of discharge. Now one ground of exception is a refusal to charge that the coroner's sale on other executions directed by the bank's attorney discharged the sheriff's levy. The attorney, however, seems not to have acted exclusively for the bank; and of so much as was actually sold the plaintiff in error had the benefit. But the judge left to the jury, without particular evidence, it would seem, to say that all had not been sold which had been included in the sheriff's levy; and this without attending to the presumptions of fact which arose from the nature of the transaction. To weigh these presumptions with their counterpoising proofs is the business of the jury; to declare their existence, in the first instance, is the business of the court. Now the subsequent seizure and sale, according to the coroner's levy of all Reynolds's personal property, rebutted the implication of amount from the sheriff's levy; for the presumption is that all was sold, and for its value. This presumption, however, may in turn be repelled by proof that the subsequent levy was of different goods, or that a part was wasted or remained unsold.

There is an exception to the direction that the bail is liable for all received, and it is impossible to doubt it; but, unaccompanied by proof of collusion or ratification, the memorandum of the sheriff's receipt, alleged to have been produced in court, was not evidence to affect him. The prothonotary had no authority to record the fact; and the receipt itself, had it been produced at the trial, could not have gone to the jury unpreceded by proof of authenticity.

The remaining point raised on this execution—that by directing it to the sheriff against one of his sureties, when it might have been directed to the coroner, the plaintiff gave the co-surety an equity to be discharged from responsibility in the particular case—was ruled substantially against the exceptant's position in Beale *v.* The Commonwealth, 11 *Serg. & Rawle* 299.

It is assigned, also, that judgment ought not to have been rendered for the plaintiff on the pleadings. To meet the eventual liability of his testator, the defendant pleaded that the action, though brought in time, had not been duly prosecuted; and on this, the plaintiff, instead of demurring, went to issue. It is scarce necessary to say, that no statute requires diligent prosecution of an action on a sheriff's recognizance, the limitation being that an action against the sureties be not instituted after five years. A *scire facias* on the act of 1798 was held, in Vitry *v.* Dauci, 3 *Rawle*, to require diligent prosecution; but a sheriff's recognizance was held, in Snyder *v.* The Commonwealth, 3 *Penns.* 286, to require no *scire facias* at all. The argument of the plaintiff in error would confound its lien with the subordinate lien of the intestate acts, which, making the effects of a decedent a fund for payment of his debts, require an action to be duly prosecuted in order to reach the real assets at the end of seven years; saving, at the same time, liens existing at the death. The fact pleaded was, therefore, impertinent; but as the plaintiff thought fit

[Beale v. The Commonwealth.]

to put it in issue, it might be doubted whether he had not made it a turning point. It was, however, what was formerly called a horse plea, and treated as a nullity ; and it is but to go another step, to treat the issue formed on it as a nullity also.

The last exception is to the title of the commonwealth to sue for her own use, and not for a party grieved. On the face of the declaration, the plaintiff has a legal title which is sufficient, it being unusual, and indeed impertinent, to set out the title of the beneficiary for any purpose but to show that the interposition of the commonwealth has not been wantonly invoked ; as was stated in Armstrong *v.* Lancaster, 5 *Watts* 68. But it has been ruled in Reigart *v.* Elmaker, 6 *Serg. & Rawle* 44, that to omit the title of the equitable plaintiff, is not error if issue be joined in the name of the legal one. Here it appears by the writ, that there has been no interference by a stranger ; and the declaration might, if necessary, be omitted. This alone would not be cause of reversal.

Judgment reversed, and a *venire de novo* awarded.